IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CITY OF WHEELING,**
**Employer Below, Petitioner**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-379**      (JCN: 2024012069)

**CODY MELSOP,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner City of Wheeling ("Wheeling") appeals the August 22, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Cody Melsop filed a response.[1] Wheeling did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 21, 2023, while employed by Wheeling as a firefighter, Mr. Melsop suffered an injury to his right knee when carrying a forty-pound tote upstairs. On the same day, Mr. Melsop completed an Employees' and Physicians' Report of Occupational Injury or Disease alleging that he injured his right knee while walking up the stairs at the fire station. The physician's section of the application was completed by a provider at the Wheeling Hospital Emergency Department, who indicated that Mr. Melsop sustained an occupational injury to his right knee. Mr. Melsop signed a City of Wheeling Incident and Investigation Report dated December 21, 2023, stating that while walking up the stairs at the station, he felt a pop on the outside of his right knee and had a sharp pain in his knee and difficulty walking. Mr. Melsop also reported the incident to his supervisor on the day of the injury.

Mr. Melsop was seen by Scott Miller, FNP-C, on December 22, 2023. Mr. Melsop reported that the day before, while walking up the stairs at work, he heard a pop in his right knee, and he felt pain in his right knee. Mr. Melsop further reported that he has had

---

[1] Wheeling is represented by Aimee M. Stern, Esq. Mr. Melsop is represented by Sandra K. Law, Esq.

difficulty walking since the injury. FNP-C Miller noted decreased range of motion and tenderness over the lateral joint line and lateral collateral ligament. A right knee x-ray revealed patellar narrowing and spurring. FNP-C Miller assessed right knee pain.

On December 28, 2023, Mr. Melsop was seen by Ross Tennant, NP. Mr. Melsop reported he was walking up a flight of stairs at work when he experienced a popping sensation in his right knee and, since the injury, he has had pain and swelling in his right knee and difficulty walking. Mr. Melsop denied any previous injuries to his right knee. NP Tennant assessed a right knee sprain and indicated that Mr. Melsop should begin physical therapy and undergo an MRI to help determine if there was internal derangement.

An Employer's Report of Occupational Injury or Disease was completed by Rebecca Fisher, Human Resources Administrative Assistant, dated January 8, 2024. Ms. Fisher indicated that Mr. Melsop reported his injury to Seth Mowder on December 21, 2021, that she had no reason to question the injury, and that light duty was available. On January 9, 2024, the claim administrator issued an order rejecting the claim based on a finding that the injury was not work related. Mr. Melsop protested this order.

On February 9, 2024, Mr. Melsop was seen by Renato Delacruz, M.D. Dr. Delacruz assessed internal derangements and arthritis of the right knee, and he ordered an MRI. On March 1, 2024, Mr. Melsop underwent a right knee MRI revealing an irregularity at the posterior horn of the medial meniscus without displaced tearing; the medial compartment had significant cartilage loss along the central weight bearing portions with underlying moderate edema; lateral cartilage loss was mild; patellofemoral cartilage loss was mild; large knee joint effusion; and small joint bodies were seen along the posterior margin of the anterior cruciate ligament.

Darren Frank, M.D., performed an orthopedic evaluation of Mr. Melsop on April 1, 2024. Dr. Frank reviewed the MRI and indicated there is high-grade cartilage loss in the medial compartment, particularly on the medial femoral condyle, and there appears to be a tear of the posterior horn of the medial meniscus, approaching the meniscal root. Dr. Frank diagnosed a medial meniscus tear and medial compartment osteoarthritis. On April 23, 2024, Mr. Melsop underwent a right knee arthroscopy with medial meniscal root repair.

On April 16, 2024, Mr. Melsop was deposed, and he testified that he is a fire engineer and EMT. Mr. Melsop testified that when he was not out on a call, his duties at the station included cutting grass, cleaning the station, salting the driveway, shoveling snow, doing laundry, cooking meals, detailing vehicles, performing minor maintenance on the vehicles, restocking supply closets, restocking equipment, and training. Mr. Melsop stated that on December 21, 2023, he was carrying a large tote with about forty pounds of supplies from the laundry room, which is downstairs, and he proceeded up the stairs. Mr. Melsop testified that about halfway up the stairs he felt an excruciating pain in his right

knee and immediately following it felt like he had no stability and his knee was weak. Mr. Melsop stated that he couldn't put a lot of weight on it, and he felt that his knee was getting worse as he continued to go up the stairs. Mr. Melsop testified that he iced his knee and was able to finish his shift, and after his shift, he went to Urgent Care.

On August 22, 2024, the Board reversed the claim administrator's order rejecting the claim. The Board found that the evidence established that Mr. Melsop sustained a right knee injury in the course of and resulting from his employment. Further, the Board held the claim compensable for right knee sprain. Wheeling now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Wheeling argues that the medical records and claim documents indicate that Mr. Melsop described the mechanism of injury as simply walking up the stairs when he felt his knee pop. Wheeling further argues that Mr. Melsop's injury did not result from his employment and the injury would have occurred regardless of where Mr. Melsop was walking at the time. Wheeling also argues that Mr. Melsop did not testify that he was carrying a forty-pound tote at the time of the injury until four months after the injury, thus, his testimony is not credible. We disagree.

"'In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment.' Syl. pt. 1, *Barnett v. State*

3

*Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970)." Syl. Pt. 1, *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986).

Here, the Board determined that there is a direct causal connection between Mr. Melsop's work and his right knee injury, as he was performing his job duties at the time of the injury. The Board found that Mr. Melsop's injury is attributable to a definite, isolated fortuitous occurrence in the course of and resulting from his employment. The Board further found that Mr. Melsop was not merely walking when his injury occurred. The Board noted that, at the time of the injury, Mr. Melsop was carrying a forty-pound tote up a flight of approximately seventeen stairs. The Board found that Mr. Melsop carrying forty pounds up a long flight of stairs constituted an increased risk for Mr. Melsop, which was "qualitatively peculiar to his employment," and that he faced an increased quantity of a risk.

The Board distinguished the facts of this case from the facts in *Hood v. Lincare Holdings, Inc.*, 249 W. Va. 108, 894 S.E.2d 890 (2023). In *Hood*, the Supreme Court of Appeals of West Virginia held that: "In the context of workers' compensation law, there are four types of injury-causing risks commonly faced by an employee at work: (1) risks directly associated with employment; (2) risks personal to the claimant; (3) mixed risks; and (4) neutral risks." *Id.* at 110, 894 S.E.2d at 892, syl. pt. 4. The Board noted that in *Hood*, the Court affirmed the rejection of the claim and found that the claimant's injury fell into the category of a neutral risk.[2] The Board noted that the Court noted that the claimant did not slip, trip, or fall and he was not carrying anything.

In *Kittle v. ACNR Resources, Inc.*, No. 22-ICA-204, 2023 WL 3167482 (W. Va. Ct. App. May 1, 2023), this Court affirmed the rejection of the claim based on a finding that the claimant failed to establish that he faced an increased risk of injury related to an aspect of his employment. The Board noted that this Court indicated that if the claimant had been carrying an industrial fan at the time of his injury, then the result may have been different.[3]

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Melsop's injury is attributable to a definite, isolated fortuitous occurrence in the course of and resulting from his employment as he was performing his job duties at the time of the injury. Further, we find that the Board was not clearly wrong in determining that Mr. Melsop faced an increased risk of injury while carrying a forty-pound tote on a flight of stairs.

---

[2] The claimant in *Hood* was descending stairs at the time of his injury.

[3] The claimant in *Kittle* was walking between industrial fans in order to move them at the time of his injury.

We find no merit in Wheeling's argument that Mr. Melsop's testimony regarding the mechanism of injury is not credible because the testimony occurred four months after the injury. We note that there is no evidence directly refuting Mr. Melsop's testimony. Further, we will defer to the Board's determinations of credibility. *See Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which rejected the claim.

Accordingly, we affirm the Board's August 22, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White